## Americans for Democratic Action v. Rizzo

*Gregory M. Harvey*, for plaintiffs.
*John M. McNally, Jr.*, for defendants.

GREENBERG, *J.*, April 9, 1975—This action was commenced by a complaint in equity seeking to enjoin the implementation of Civil Service Regulation 33.04 on the ground that the regulation was adopted in violation of the Philadelphia Home Rule

Charter and was intended to permit defendants to hire city employes on the basis of their political affiliations.

Defendants have filed preliminary objections to the complaint raising, inter alia, the issues of the standing of plaintiffs, their failure to exhaust administrative remedies and the propriety of regulation 33.04. We discuss these, since the first two concern the viability of the action as commenced in this court and the third is dispositive of the action.

A. *Plaintiffs' Standing.*

The issue of plaintiffs' standing has been simplified by plaintiffs' agreement that under S.P.C.A. v. Bravo Enterprises, Inc., 428 Pa. 350, 237 A. 2d 342 (1968), the two unincorporated associations lack standing. There remains the question of whether individual taxpayers have standing to challenge defendants' actions.

Civil Service Regulation 33.04, upon which this suit is based, was adopted to exclude from civil service requirements employes hired under the Federal Comprehensive Employment and Training Act (CETA) of December 28, 1973, Pub. L. 930203, sec. 1, 87 Stat. 839, 29 U.S.C.A. §§801, et seq. CETA authorizes Federal grants to cities and other governmental units for the purpose of providing job training and employment opportunities for economically disadvantaged and unemployed persons.

Defendants argue that the taxpayers of a municipality may sue only to prevent the wrongful expenditure of the money of the municipality or the wasting of its assets: Schlauger v. West Berwick Borough, 261 Pa. 605, 104 Atl. 764 (1918). Since the funds involved here come entirely from the Federal Government, the contention is that plain-

tiffs do not fall within the ambit of the above rule and, therefore, lack standing.

It is also argued that, regardless of whose funds are involved, plaintiffs have shown no harm to their interest as taxpayers because the employes in question would be paid the same salary whether they are exempt from civil service or not. These arguments overlook the significant taxpayers' interest averred in paragraphs 25 through 28 of the complaint. The allegations there are that defendants have sought to have CETA employes excluded from civil service requirements through regulation 33.04, so that these jobs may be used for political patronage. It is further alleged that it is the intention of defendant, Rizzo, to hire employes for these jobs on the basis of their political affiliations in violation of the regulations promulgated by the Secretary of Labor prohibiting political patronage in CETA programs: 29 C.F.R. §96.26(b). Defendants thereby risk the termination of those programs in Philadelphia which would, in turn, deprive the city of millions of dollars that would otherwise be available for public employment to the injury of plaintiffs as taxpayers.

In recent years, the basis upon which taxpayers' suits may be brought has been broadened by our Supreme Court's recognition that "A taxpayer's suit, as an alternative to reliance on public prosecutions to prevent and redress wrongful conduct, serves an important public interest.": Price v. Philadelphia Parking Auth., 422 Pa. 317, 221 A. 2d 138 (1966), at page 329, n. 21. The court has accordingly held that a taxpayer has a sufficient pecuniary interest to challenge an ordinance which would lead to the city's improperly incurring a debt for the construction of a sports stadium (Martin v. Philadelphia, 420 Pa. 14, 215 A. 2d 894 (1966));

the illegal exemption of a tract of real estate from the tax rolls (Price v. Phila. Parking Auth., supra), and the failure to award a public contract to the lowest responsible bidder as required by law: Faden v. Phila. Housing Auth., 424 Pa. 273, 227 A. 2d 619 (1967). Of the above cases, Price is most clearly analogous to the matter before us. These two taxpayers attacked the parking authority's decision to purchase a large tract of real estate for the construction of a public parking facility which would result in a tract of prime real estate being removed from the tax rolls. In upholding the taxpayers' standing, the court agreed with the chancellor's statement that, "to the extent that real estate tax revenues will be diminished by an illegal exemption, and hence be unavailable for future use, . . . [plaintiffs] as contributors to that fund will have suffered a pecuniary loss.": 422 Pa. at page 326.

Here, defendants' acts risk the termination of Federal funds to which the city is entitled, thereby causing the funds available for the city's use to be diminished to the obvious detriment of plaintiffs who, as citizens and taxpayers, must either replace those funds through increased taxes or forego the services they were intended to provide. Since a taxpayer's interest in his local government's access to Federal funds cannot be underestimated in this age of ever-increasing Federal payments to municipalities and "revenue sharing" programs, we find that the individual taxpayers do have standing to maintain the within action.

B. *Exhaustion of Administrative Remedies.*

Defendants argue that since the alleged politically motivated hiring practices of which plaintiffs complain are a violation of both the CETA Act, supra, Pub. L. 93-203, Title 2, §208(f), 29 U.S.C.

§848(f), and the regulations adopted by the Department of Labor, 29 C.F.R. 96.26(b) (Pol. Patronage Prohibitions), plaintiffs must first exhaust the administrative remedies provided by the Labor Department regulations: 29 C.F.R. §98.40(c). For a number of reasons, we cannot agree.

First, plaintiffs' action seeks to enforce the requirements of the Philadelphia Home Rule Charter which is allegedly violated by the adoption of Civil Service Regulation 33.04, not the provisions of the Federal act or the regulations of the Department of Labor. Since the Secretary of Labor, to whom defendants would have plaintiffs take their complaint, could not grant any relief for the violation of the Philadelphia Home Rule Charter, there is no need for plaintiffs to exhaust any Federal administrative remedies.

Second, if plaintiffs were to file their complaint with the Secretary of Labor, the only action which he is authorized to take is to order a "suspension or termination of, or refusal to grant or continue Federal financial assistance.": 29 C.F.R. §98.48(f). This is exactly the eventuality which plaintiffs have filed their complaint to prevent.

Finally, there is no indication that the section of the regulations on which defendants rely, 29 C.F.R. §98.40(c), attempts to limit the jurisdiction of powers of the State courts. On the contrary, subpart C of section 98.44 requires that a complaint filed with the Secretary contain:

"(5) A statement disclosing whether proceedings involving the act complained of have been commenced before a State or local authority, and if so, the date of such commencement and the name of the authority."

That requirement clearly indicates that the Federal regulations are not intended to supplant the jurisdiction of the State courts.

C. *The Propriety of Civil Service Regulation 33.04.*

Section 7.7-301 of the Philadelphia Home Rule Charter states:

"All officers and employees of the City, including all officers and employees of all departments, all independent boards and commissions and all departmental boards and commissions, shall be under Civil Service except: . . .

"(e) Persons temporarily appointed or designated to make or conduct a special inquiry, investigation, or examination, or to perform a special service where such appointment or designation is certified by the Civil Service Commission to be for employment which because of its expert or unique character could not, or should not, be performed by persons in Civil Service; . . ."

Civil Service Regulation 33.04, on the other hand, provides:

"*Comprehensive Employment and Training Act of 1973 Program.* In accordance with the concept of giving maximum opportunities for training and employment under the provisions of Federal Public Law 93-203, known as the 'Comprehensive Employment and Training Act of 1973' (CETA), and notwithstanding any provisions to the contrary in the Civil Service Regulations, the following subsections of the Regulations shall apply:

"33.041 *Prospective CETA Appointees.* All appointees to the public service under the provisions of Title II of the Comprehensive Employment and

Training Act of 1973 Program (CETA) are to be exempt employees.

"33.042 *Preferences in Selection of Eligible Candidates.* Persons eligible for appointment under Title II of CETA must be appointed in accordance with the provisions of Part 96 of Title 29 of the Rules and Regulations of the Department of Labor."

Plaintiffs contend that regulation 33.04 violates section 7.7-301 by excluding CETA employes from civil service although those employes do not fall within any of the exceptions to the section, including the exceptions of subparagraph (e). However, after consideration of all the factors involved, such a restrictive interpretation of section 7.7-301 seems unjustified.

In 1970, when a similar question arose with regard to the Model Cities Program, the Hon. Matthew W. Bullock, Jr., then First Deputy City Solicitor, made the following observations in a Memorandum of Legal Advice, No. 3703:

"The Philadelphia Home Rule Charter was adopted in 1951 before the advent of the current wide variety of Federal programs involving complete grants or matching funds to the City. The framers of the Charter did, however, recognize the importance of cooperative efforts on the part of the various levels of government. Section 8-402 specifically obligates the various City departments to cooperate with State, Federal and private agencies having similar functions. A completely rigid application of civil service would make the City ineligible to participate in various Federal programs involving deprived areas. It is our view that it was never the intention of the framers of the Philadel-

phia Home Rule Charter that the civil service regulations become an effective barrier to the implementation in Philadelphia of Federal programs intended to aid the cities and for which Philadelphia is in competition with other cities. This is particularly so where the salaries of City personnel are in fact being fully paid for with Federal money, as in the present case."

We concur in this view of the Home Rule Charter as a document capable of adaptation to the requirements of a new era through reasonable interpretation. To hold otherwise and require a rigid application of charter provisions would be to shackle the people of Philadelphia with a government that can adjust to new circumstances only through the time-consuming process of referendums (Pa. Constitution, Art. IX, sec. 2) which would result in the denial of the benefits of "improved self-government" the charter was designed to provide.

Accordingly, we must examine the language of section 7.7-301 to determine if regulation 33.04 is inconsistent with it, as plaintiffs suggest.

It is clear from the outset that to be validly excluded from the requirements of civil service, CETA employes must fall within one of the six groups of exceptions enumerated in section 7.7-301. Of these, subparagraph (e) provides the exception most applicable to the situation at hand. The relevant requirements for exclusion under that subparagraph are: (1) temporary appointment, and (2) performance of a special service which, because of its unique character could not be performed by persons in civil service. CETA employes fulfill both of these requirements.

First, their appointment is temporary in that

CETA jobs will last only as long as the city continues to receive the Federal funds to pay for them and there is nowhere a guarantee that these funds will be appropriated for any definite period of time.

Second, section 205 of the CETA Act requires the city to assure the Federal Government that special consideration in filling CETA jobs will be given to persons residing in areas of substantial unemployment, unemployed veterans, hard-core unemployed and persons who have participated in manpower training programs: 29 U.S.C. §845(c).

"[A]ssurances that the program will, to the maximum extent feasible, contribute to the elimination of artificial barriers to employment and occupational advancement, including civil service requirements which restrict employment opportunities for the disadvantaged.": 29 U.S.C. §845(c)(21).

These requirements make it impossible to fill CETA jobs through the normal civil service procedure of competitive examinations and certification of the two persons with the highest marks on a nondiscriminatory basis. Therefore, although the work performed by CETA employes may not, in itself, be special, the requirements the city must meet to qualify for the necessary Federal funds make these jobs of such a unique character that they could not be performed by regular civil service employes.

Plaintiffs argue that this approach to reconciling CETA requirements with the dictates of the Home Rule Charter is not that envisioned by the Federal act. They interpret the act as necessitating the revision of local civil service regulations to eliminate the qualification requirements that prevent the hir-

ing of the disadvantaged while maintaining the other provisions of civil service. It is their contention that regulation 33.04, rather than revising civil service requirements, abandons these altogether, leaving CETA employes without the benefits of civil service contrary to the intent of Congress.

Assuming, arguendo, the validity of this interpretation of congressional intent, it does not necessarily follow from the exclusion of CETA employes from civil service requirements that this intent has not been fulfilled. In fact, a careful reading of regulation 33.04 itself leads us to believe that proper provision has been made to extend appropriate civil service benefits to CETA employes. Regulation 33.043 provides:

*"Compensation and Leave Benefits for Public Employment Program Employees under the Provisions of the Comprehensive Employment and Training Act of 1973.* Individuals employed as Public Employment Program employees who take and successfully pass an announced examination for the same class of position will, in accordance with Section 6.084 of the Regulations, upon Civil Service appointment, receive the civil service pay rate in the pay range to which they would have been entitled had the position been a civil service position during their entire tenure therein while it was exempt. *This policy would be in keeping with the intent of the City-Federal contract for Public Employment Program employment in that all conditions of employment shall be equal to those of civil service employees.* Unused vacation and sick leave benefits earned during Public Employment Program employment prior to appointment to a civil service position, as a result of taking an announced civil service examination, shall be car-

ried over to the civil service position." (Emphasis supplied.)

The advantages of excluding CETA employes from civil service while giving them the benefits of civil service through contract with the Federal Government are obvious. This approach extends to the employe the advantages of civil service working conditions without prejudicing the rights of normal civil service employes who have obtained their positions through the method of examination and certification. It seems, therefore, that regulation 33.04 is both the type of "revision" contemplated by the act and a valid exercise of the civil service Commission's discretion.

Further, we do not find the failure of the Civil Service Commission to formally certify the above facts critical to the application of subparagraph (e) in this case. Although the language of section 7.7-301(e) requires such a certification, we feel that the unanimous adoption of regulation 33.04 by the commission on October 10, 1974, and its reaffirmation on November 7, 1974, satisfy whatever need that certification was intended to meet.

Finally, it should be noted that regulation 33.042 requires that persons eligible for appointment under CETA must be appointed in accordance with the provisions of Part 96 of Title 29 of the Rules and Regulations of the Department of Labor. One of the provisions of Part 96 specifically prohibits political patronage as a consideration in the hiring or advancement of CETA employes: 29 C.F.R. §96.26(b). Thus, rather than being a tool designed to facilitate political patronage, regulation 33.04 itself bans the use of CETA jobs as awards for political affiliations and opens to plaintiff appropriate remedies should this regulation be violated.

In light of the above considerations, we believe that the action taken by the Civil Service Commission in approving regulation 33.04 was not in violation of the Philadelphia Home Rule Charter and, therefore, plaintiff's complaint should be dismissed. This decision makes it unnecessary for us to consider defendants' remaining preliminary objections.

We, therefore, enter the following

## ORDER

And now, April 9, 1975, defendants' preliminary objections to the complaint as to the individual plaintiff's standing and exhaustion of administrative remedies (objection numbers 1, 4, 5 and 7) are overruled.

Defendants' preliminary objection to the effect that regulation 33.04 is in accordance with the provision of the Home Rule Charter and not in violation thereof (preliminary objection number 6) is sustained and the complaint is dismissed.

The remaining preliminary objections are dismissed as moot.